[L. A. No. 2418.  Department One.—December 7, 1909.]

ROBERT MARSH, Appellant, v. M. A. LOTT, Respondent.

SPECIFIC PERFORMANCE—LACHES—DEMURRER.—The defense of laches to an action by a vendee for the specific performance of a contract for the sale of land, may be raised by demurrer. Such a defense is, in substance, that the complaint does not show equity, or fails to state facts sufficient to constitute a cause of action.

ID.—STATUTE OF LIMITATIONS—APPLICATION TO SUIT IN EQUITY.—When an express statute of limitations applies to a suit in equity, mere delay to commence the suit for a period less than that of the statute is never a reason for dismissing the proceeding. There must be other circumstances which, taken in conjunction with the mere lapse of time, renders it inequitable to enter into the investigation or give the relief sought.

ID.—LAPSE OF TIME CONSTITUTING LACHES.—There is no artificial rule as to the lapse of time or the circumstances which will justify the application of the doctrine of laches, and each case as it arises must be determined by its own circumstances.

ID.—ACQUIESCENCE OF VENDEE IN VENDOR'S BREACH OF CONTRACT.— Where, after the vendor's violation or express repudiation of the contract of sale, the vendee delays to proceed in the enforcement of the contract for such a length of time as to constitute acquiescence in the vendor's breach, or to create a presumption of abandonment of his right to specific performance, relief in equity will be denied.

ID.—OPTIONAL CONTRACT OF SALE—DELAY OF THREE YEARS IN ENFORCING CONTRACT.—Where an option, based upon a consideration of twenty-five cents, and extending over a period of more than three months, for the purchase of property worth one hundred thousand dollars, is expressly repudiated by the vendor before there has been any acceptance by the vendee, and is again repudiated when notice is given of acceptance and a tender is attempted to be made of the first installment of the purchase price, the delay of the vendee for more than three years from the refusal of such tender, and until the property had greatly increased in value, to indicate that he

would oppose the repudiation, if unexplained and unaffected by other circumstances, constitutes an acquiescence in the vendor's breach of the contract, and prevents its specific enforcement by the vendee.

ID.—SUFFICIENCY OF COMPLAINT—JUDICIAL NOTICE OF PRIOR ACTION.—In determining the sufficiency of the complaint in an action by the vendee, which disclosed such facts, the court cannot take judicial notice of a prior action brought by him to enforce the contract, for the purpose of excusing his apparent acquiescence and laches.

ID.—REFUSAL OF LEAVE TO AMEND COMPLAINT—APPEAL—ABSENCE OF SPECIFIC REQUEST.—The appellate court cannot hold that the trial court abused its discretion in denying the plaintiff leave to amend such complaint, upon sustaining a demurrer thereto, by setting up the prior action for the purpose of excusing his apparent acquiescence and laches, when there is nothing in the record to indicate that he asked leave in the trial court to amend in any designated particular, or in any way specified therein the nature of any proposed amendment.

ID.—INSUFFICIENT COMPLAINT FOR DAMAGES.—The complaint by the vendee, seeking specific performance of the contract, which is insufficient to warrant such equitable relief because it discloses acquiescence and laches, cannot be held sufficient to entitle him to damages, under section 3306 of the Civil Code, in the absence of any allegation tending to show the value of the estate to be conveyed at the time of the breach, or any other allegation showing damage as to any other element prescribed in that section.

APPEAL from a judgment of the Superior Court of Los Angeles County. N. P. Conrey, Judge.

The facts are stated in the opinion of the court.

Frank James, for Appellant.

J. Wiseman Macdonald, for Respondent.

ANGELLOTTI, J.—This is an appeal from a judgment entered upon sustaining a demurrer to the amended complaint, without leave to amend. The action was one by the vendee for specific performance of an alleged contract for the sale of certain real estate in the city of Los Angeles.

The complaint shows the following facts:—

Plaintiff was engaged in the real estate business in his own name and also in the business name of "Robert Marsh & Co." On February 25, 1905, defendant executed and delivered to

him an option for the purchase of the land, the same being as
follows:—

"For and in consideration of the sum of twenty-five cents
to me in hand paid, I hereby give Robt. Marsh & Co., an
option to purchase, at any time up to and including June 1,
1905, with privilege of thirty days' extension, from date
hereof, the following described property, to wit: South 1-2
of lot nine and all of lot 8, block 101, Bellevue Terrace Tract,
and all of the property owned by myself in above block, for the
sum of one hundred thousand dollars, payable thirty thousand
cash balance on or before four years 4 1-2 per cent net.

"I agree to furnish an unlimited certificate of title show-
ing said property to be free from all encumbrance, and to
convey the same in such condition by deed of grant, bargain,
and sale, and pay regular commission.

"M. A. LOTT (Seal).

"Dated Feby. 25th, 1905.
"Property 90x165.
"Building 6 flats—2 cottages.
"Rents, $260.00."

On June 1, 1905, plaintiff notified defendant in writing that
he accepted the privilege of thirty days' extension, and elected
to so extend the option.

On June 2, 1905, defendant notified plaintiff in writing
that she declared the agreement terminated and withdrew
the property from sale under said agreement, and she has ever
since claimed that plaintiff has no right to purchase the prop-
erty under said agreement. This claim has been made "in
bad faith" and solely because the property has increased in
value.

On June 29, 1905, plaintiff "notified the defendant . . .
of his election to purchase said real estate, and duly tendered
to and offered to pay her . . . in gold coin of the United
States of America, said cash payment of thirty thousand
dollars, but she refused the same and ever since has refused
and now refuses the same." Plaintiff is and at all times has
been able, willing, and ready to pay defendant said thirty
thousand dollars.

On February 25, 1905, and on June 29, 1905, the fair mar-
ket and reasonable value of the property was not in excess of
one hundred thousand dollars. Such value has gradually

increased. In January, 1906, it was one hundred and fifteen thousand dollars. Since January, 1906, it has increased in value at the rate of about one thousand dollars per month, being on August 5, 1908, one hundred and forty-seven thousand dollars.

Ever since February 25, 1905, defendant has been in possession of the property, either in person or by her tenants, receiving all the rents and income thereof, which are two hundred and sixty dollars a month.

Plaintiff "is and always has been ready, willing and able to fulfill the" terms of said option agreement.

On August 5, 1908, plaintiff again tendered defendant thirty thousand dollars cash, and also the further sum of seventy thousand dollars cash as and for the balance of the purchase price, and also the further sum of $12,362.98 as and for interest thereon, and demanded that she execute and deliver to him a deed of conveyance of the property and also an "unlimited certificate of title showing the said premises free from all encumbrance," but defendant refused to execute and deliver said deed or deliver said certificate of title.

In the complaint, plaintiff again tenders all of said money and offers to pay any other amount for which he may be obligated by the option agreement.

This action was not commenced until August 5, 1908.

The demurrer was based on numerous grounds, but for the purposes of this appeal it will be unnecessary to consider more than one. It was specially alleged therein as ground of demurrer that it appears by said complaint that the plaintiff has been guilty of laches, and that he is not entitled to any relief in equity. It is settled in this state that this defense may be raised by demurrer (*Kleinclaus* v. *Dutard,* 147 Cal. 245, 250, [81 Pac. 516]; *Bell* v. *Hudson,* 73 Cal. 285, 289, [2 Am. St. Rep. 791, 14 Pac. 791]), such defense being, in substance, as said in the latter case, that the bill does not show equity, or, in the language of our statute, that the complaint does not state facts sufficient to constitute a cause of action.

The allegations of the complaint are clear and definite to the effect that on June 2, 1905, the defendant notified plaintiff in writing that she would not longer be bound by the option agreement, and has ever since claimed that plaintiff has not any right to purchase the property under said option

agreement, and that she refused to accept the thirty thousand dollars when the same was tendered by him on June 29, 1905, and has ever since refused to accept it. Her absolute repudiation of the alleged agreement and of any claim of plaintiff thereunder at all times since June 2, 1905, could not be made to more clearly appear. So far as appears from the complaint, which is all we can look to in determining the question presented by the demurrer, plaintiff took no steps whatever to enforce any right possessed by him under the option agreement, notwithstanding the absolute repudiation thereof by defendant, until August 5, 1908, more than three years after such repudiation. Having made his tender of thirty thousand dollars on June 29, 1905, he rested, and until August 5, 1908, so far as any outward manifestation went, acquiesced in the position taken by defendant that the option agreement was at an end. At the last-named date, the property having increased in value since the refusal of his tender forty-seven thousand dollars, he concluded to attempt to enforce the alleged agreement, made a new tender of the full amount that he claimed would be due according to its terms, $112,362.98, and resorted to a court of equity for relief. It is apparent that he has been free all this time to rest on defendant's refusal to recognize the option agreement as further binding her, and declining to purchase the property if for any reason he thought it advantageous to do so. This is the case made by the complaint.

It is undoubtedly true that when an express statute of limitation applies to a suit in equity, *mere delay* to commence the suit for a period less than that of the statute of limitations is never a reason for dismissing the proceeding. (*Lux* v. *Haggin*, 69 Cal. 267, [2 Pac. 919, 10 Pac. 674].) There must be other circumstances which, taken in conjunction with the mere lapse of time, render it inequitable to enter into the investigation or give the relief sought. There is no artificial rule as to the lapse of time or the circumstances which will justify the application of the doctrine of laches, and each case as it arises must necessarily be determined by its own circumstances. (See *Cahill* v. *Superior Court*, 145 Cal. 46, [78 Pac. 467]; *Kleinclaus* v. *Dutard*, 147 Cal. 245, 250, [81 Pac. 516].) There is another material circumstance in the case at bar. For more than three years the plaintiff, so far as appearances

went, quietly acquiesced in and assented to defendant's ex-
press refusal to consider the option as in any way binding.
In his work on Specific Performance of Contracts, Mr. Pom-
eroy says: "Where one party, even without any just or suf-
ficient reason for so doing, and as a mere act of arbitrary
will, notifies the other that he shall not perform the contract—
shall treat it as at an end—acquiescence by the party notified
will cut off the latter's right of enforcement, and this acquies-
cence will be sufficiently shown by a delay in commencing a
suit which would otherwise be too short to prejudice his
rights." (Sec. 412.) The rule is stated in 26 Am. & Eng.
Ency. of Law, p. 80, to be that where, after defendant's viola-
tion or express repudiation of his contract, the plaintiff delays
to proceed for such a length of time as to constitute acquies-
cence in defendant's breach, or a presumption of abandon-
ment of his right to specific performance, relief in equity will
be denied. (See, also, *McDermid* v. *McGregor,* 21 Minn. 111,
115; *Harrigan* v. *Smith,* [N. J.] 40 Atl. 13; *Gentry* v. *Rogers,*
40 Ala. 442.) Of course, notwithstanding the delay in moving
to enforce the alleged contract, the circumstances may be
such as to prevent any presumption of acquiescence or aban-
donment, as, for instance, where a vendee is in possession of
the property under the alleged contract, and continues in such
possession, claiming under the contract, notwithstanding the
attempted repudiation. That the delay here shows such ac-
quiescence seems to be very clear. A mere option based upon
the insignificant consideration of twenty-five cents, for the
purchase of property worth one hundred thousand dollars,
extending over a period of more than three months, and
drawn in such a way as to give rise to the gravest questions
as to its validity, is expressly repudiated by the vendor by
written notice served on the vendee before there has been any
acceptance by the vendee, and again when notice is given of
acceptance and a tender is attempted to be made of the first
installment of the purchase price. The vendee does abso-
lutely nothing for more than three years from the refusal of
such tender to indicate that he will oppose the claim of the
vendor that the option is no longer binding, and it is only
when, at the expiration of two years, the property has in-
creased in value to the extent of forty-seven thousand dollars,
that he intimates any intention to oppose the claim of the

vendor that the alleged option is not binding. It would be difficult to find a clearer case of apparent acquiescence than that shown by such circumstances, unexplained and unaffected by other circumstances. During this period of more than three years the plaintiff has been in no way obligated to make this purchase. In view of the great increase in the value of this property, it would be manifestly unfair and inequitable to allow him at this late day, after such acquiescence, to insist that the alleged option agreement shall now be enforced.

Learned counsel for plaintiff does not seriously contend that the absolute failure of plaintiff to take any step to enforce his alleged rights within three years after the repudiation of the contract would not, under the circumstances here stated, constitute laches barring the remedy of specific performance. He does insist, however, that either the court will take judicial notice of certain alleged facts stated by him in his brief showing that the plaintiff did diligently proceed to enforce his claim, or that he should have been permitted to amend his complaint by inserting allegations showing such matters. The matter of which he desires us to take judicial notice is, as stated in his brief, a prior action brought by plaintiff against defendant to specifically enforce this option agreement. As to this, he substantially states in his brief the following: The action was tried in the superior court of Los Angeles County and resulted in a judgment in favor of defendant. The plaintiff appealed to the supreme court. The appeal was transferred to the district court of appeal. That court affirmed the judgment of the superior court on June 20, 1908. This action was commenced within a reasonable time thereafter. No authority is cited for the proposition that we can take judicial notice of these matters in determining the sufficiency of the complaint in this action, and we know of no rule warranting it. As to the refusal to allow plaintiff to amend his amended complaint, there is nothing in the record to indicate that he asked leave in the superior court to amend in any designated particular, or in any way specified therein the nature of any proposed amendment. We do not see how, under such circumstances, we could hold that the superior court abused its discretion in denying leave to amend (see *Kleinclaus* v. *Dutard*, 147 Cal. 252, [81 Pac. 516], and cases there cited).

The reason for the failure of plaintiff to allege the former action for the purpose of avoiding the laches otherwise shown becomes apparent enough when we examine the opinion of the district court of appeal given June 20, 1908, in affirming the judgment against this plaintiff. (See *Marsh* v. *Lott*, 8 Cal. App. 384, [97 Pac. 163].) If by alleging the facts as to the former case he would have avoided the bar of laches, he would by the same facts have shown himself estopped by the judgment in that case to now seek specific performance of the option agreement. From the opinon, it appears that such action was one by this plaintiff against this defendant for the specific enforcement of this very option, instituted after and because of the repudiation thereof by defendant and her refusal to comply in any way with its terms, which were alleged. Issues of fact were joined therein and trial thereof had, resulting in a judgment on the merits in favor of the defendant. Manifestly, in view of the complete repudiation and disavowal of ' the alleged option by the defendant and the refusal to accept any tender thereunder, plaintiff was then entitled to some relief by way of specific performance if the option was binding on defendant, even if not then entitled to a deed. It cannot be held, therefore, that the former action was prematurely brought, and it was not decided on any such theory. The trial court found not only that the consideration for the option was inadequate and insufficient, but also "that the said option contract was not just and reasonable to defendant." The district court of appeal, while disagreeing with the trial court on the question of the adequacy of consideration for the option, sustained the finding as to the contract not being just and reasonable, saying: "In our judgment the only construction of which the contract is susceptible renders it manifestly unjust and unreasonable as to the defendant." Under elementary principles, the judgment on the merits denying plaintiff any relief by way of specific performance, based on this material finding of the invalidity of his alleged contract, precludes further litigation of that question between the parties. We have said this much on the question of estoppel not for the purpose of justifying an affirmance of the refusal of the trial court to allow plaintiff to again amend his complaint, but simply to show that had the complaint contained the allegations as to the prior action,

it could not have availed plaintiff as against the defense of estoppel by judgment.

It is suggested that the complaint stated facts sufficient to entitle plaintiff to damages, even if it did not show him entitled to specific performance. We cannot so hold. Section 3306 of the Civil Code provides that the detriment caused by the breach of an agreement to convey an estate in real property is deemed to be the price paid, and the expenses properly incurred in examining the title and preparing the necessary papers, with interest thereon, but adding thereto, in case of bad faith, the difference between the price agreed to be paid and the value of the estate agreed to be conveyed, "at the time of the breach," and the expenses properly incurred in preparing to enter upon the land. There is absolutely nothing in the complaint tending to show the value of the estate to be conveyed at the time of the breach, other than such allegations as tend to show that the fair market and reasonable value at that time did not exceed one hundred thousand dollars, which was the agreed price, and there is no allegation showing damage as to any other element prescribed in said section. It is therefore unnecessary to notice any other claim by plaintiff in response to this contention of defendant.

The judgment is affirmed.

Shaw, J., and Sloss, J., concurred.

Hearing in Bank denied.

Sloss, J., and Melvin, J., dissented from the order denying a hearing in Bank.